ED KINKEADE, UNITED STATES DISTRICT JUDGE
Before the Court is Bragalone Conroy PC's and Justin B. Kimble's Motion to Quash Third Party Subpoenas and Motion for Protective Order (Doc. No. 113). The Court has carefully considered the motion, the response, the reply, the supporting appendices, the applicable law, and any relevant portions of the record. The Court GRANTS the motion because the information sought through this third party discovery is protected by an attorney client privilege or by the work product doctrine, and GTL has not shown that it has overcome the burdens needed to allow it to conduct discovery that would impinge on these privileges.
A. Background
This is a patent infringement matter in which, Securus Technologies, Inc. ("Securus") has asserted that Global Tel*Link Corporation ("GTL") has infringed a number of its patents including Securus' '357 and '260 patents. GTL has asserted an inequitable conduct defense against these two patents. The basis of GTL's inequitable conduct defense involves assertions made by Securus, through its attorneys of record, in an inter partes review of *636 the '357 and '260 patents. During these proceedings, Securus asserted that the inventions of the dependent claims of these patents were constructively reduced to practice upon the filing of the patent applications. GTL asserted that the inventions were reduced to practice prior to the time the applications were filed.
The date of the inventions was important in the IPRs because this determined whether or not a prior patent, the Spadoro patent, could be asserted as prior art against the dependefind and replacent claims of the '357 and '260 patents. Spadoro was initially owned by another entity. Securus later acquired Spadoro. If the inventions claimed in the dependent claims of the '357 and '260 patents were reduced to practice prior to Securus' purchase of Spadoro, Spadoro could be used as prior art that might invalidate the dependent claims of the '357 and '260 patents. But, if the inventions were reduced to practice after Securus purchased Spadoro, Spadoro could not be used a prior art against the dependent claims of the '357 and '260 patent because at that time all the applications were commonly owned by Securus.
GTL asserts, in its inequitable conduct defense, that Securus intentionally misrepresented the date of invention for these claims when Securus asserted that the inventions were reduced to practice at the time the applications are filed. GTL asserts that these inventions were reduced to practice prior to Securus' acquisition of Spadoro and that Securus misrepresented this fact to induce the PTAB to allow the claims.
Securus was represented in those IPRs by Bragalone Conley, PC ("Bragalone") and Justin Kimble. So, GTL has served subpoenas to produce documents and subpoenas to testify at a deposition on Bragalone and Mr. Kimble regarding the inequitable conduct that GTL alleges occurred during those IPRs.
B. The Motion To Quash
In their motion, Bragalone and Mr. Kimble requests that this Court quash those subpoenas because the expected subject matter of the discovery would inquire into information that is protected by either the attorney client privilege or the work product doctrine; is available from other sources; or is information that they do not have personal knowledge of because they received the information from Securus or the inventors of the patents in suit.
GTL responds that the discovery should be allowed because the subjects are proper subjects to direct toward Bragalone and Mr. Kimble; the limited information sought is information that is only available from Bragalone and Mr. Kimble; and that the information is not protected by privilege because the crime or fraud exception to privilege applies.
C. The Discovery Subject Matters
GTL asserts that the expected discovery topics are relevant to GTL's defense of inequitable conduct. GTL's inequitable conduct defense relates to the statements made by Securus through its counsel during the IPR proceedings for the '260 and '357 patents regarding the invention date of the dependent claims of these patents. GTL asserts that through this discovery GTL will seek information needed to determine whether the alleged false statements were made knowingly and intentionally.
The deposition subpoena of Bragalone lists 25 topics for examination. The Court has reviewed each of these topics. Bragalone and Mr. Kimble, in their motion, grouped these 25 topics into 7 subjects of inquiry. For convenience, the Court adopts *637 the description of these 7 subjects of inquiry. The subjects are:
1. The facts and circumstances relating to the alleged date of conception of claims of various patent applications (topics 1-6);
2. The scope of patents and applications as compared to other patents and applications (topics 7-18);
3. The facts and circumstances relating to the assignment of the Spadaro reference (topic 19);
4. The factual basis of a technical expert's declaration (topic 20);
5. All communications, decisions, analyses, and strategies regarding the conception and reduction to practice dates of patent claims (topics 21-22);
6. Inventors' contributions to the patent claims (topics 23-24); and
7. The factual basis for statements made relating to priority dates (topic 25).
While the deposition subpoena of Mr. Kimble does not list topics, Bragalone and Mr. Kimble assert and GTL does not dispute that GTL intends to depose Mr. Kimble on these same subject.
The subpoenas to produce documents served on Bragalone and Mr. Kimble both requests documents that align with the 7 subject matters of the Bragalone deposition subpoena.
D. Analysis
Bragalone and Mr. Kimble do not represent Securus in this matter, but they did represent Securus in connection with inter partes review of Securus' '260 and '357 patents. In addition, Bragalone and Mr. Kimble continue to represent Securus in at least ten adversarial proceedings in which GTL is the opposing party, including ones in which the patents in issue in this case are also at issue in those other matters.
Bragalone and Mr. Kimble disagree with GTL as to the requirements that GTL must meet to depose Bragalone and Mr. Kimble. Bragalone and Mr. Kimble assert that GTL must meet the requirements given in Shelton v. American Motors Corporation , 805 F.2d 1323 (8th Cir. 1986) because the deposition of an opposing party's attorney is highly disfavored. The Shelton test requires a showing that 1) no other means exist to obtain the information; 2) the information sought is relevant and non privileged; and 3) the information is crucial to the preparation of the case. Shelton v. Am. Motors Corp. , 805 F.2d 1323, 1327 (8th Cir. 1986). Bragalone and Mr. Kimble acknowledge that the 5th Circuit has never explicitly adopted the Shelton test, but the 5th Circuit has used these considerations in determining if a deposition of opposing counsel was appropriate. See Nguyen v. Excel Corp. , 197 F.3d 200, 209 (5th Cir. 1999). GTL argues that the Shelton test is not applicable here because Bragalone and Conley are not opposing counsel in this matter.
The Court agrees with Bragalone and Mr. Kimble that the criteria of the Shelton test are instructive in this issue. Depositions of opposing counsel are highly disfavored. Id. Because of this they should only be allowed in limited circumstances. Id. A district court may issue a protective order to protect a party or witness from discovery. See FED. R. CIV. P. 26(c). And, upon a showing of good cause, a district court may take actions such as: ordering that discovery be had by a method other than that selected by the party seeking discovery; forbidding the discovery; and forbidding inquiry into certain matters, or limiting the scope of discovery to certain matters. Id. "One would suspect that a request to depose opposing counsel generally would *638 provide a district court with good cause to issue a protective order." Nguyen , 197 F.3d at 209. Depositions of opposing counsel disrupts the adversarial system; lowers the standards of the profession; adds to the burdensome time and costs of litigation; and detracts from the quality of the attorney client relationship. Shelton , 805 F.2d at 1327.
Even though Bragalone and Mr. Kimble are not opposing counsel in this matter, their depositions implicate the same concerns that disfavor depositions of opposing party's counsel. Bragalone and Mr. Kimble represented Securus in inter partes review of two of Securus' patents in issue in this litigation. They also currently represent Securus in other adversarial proceedings in which GTL is the opposing party and some of which involve the same patents at issue in this case. Taking this into consideration, not applying the considerations of the Shelton test could result in the same problems raised by the court in Shelton , such as detracting from the quality of the current attorney client relationship by requiring Securus' attorneys to testify against their own clients and disrupting the adversarial process, by potentially allowing discovery of Securus' counsels' litigation strategy and analysis. For the reasons, the Court believes that the Shelton test is instructive in determining whether or not good cause exists for the Court to quash the depositions of Bragalone and Mr. Kimble.
The first consideration in Shelton is that no other means exist to obtain the information. Shelton , 805 F.2d at 1327. For most of the deposition topics, the information sought is available through other means. For example, topic 1 asks for facts about the alleged conception date of inventions. This information is available from the inventors and Securus directly. And, since the attorneys were not involved in creating the inventions any information that they may have about this is second hand knowledge that they would have received from the inventors or Securus. Similarly, the facts related to the Spadoro assignment, subject 3, are available from Securus and the individuals involved in this; facts related to expert declarations, subject 4, would be available from the expert; facts related to inventors' contributions, topic 6, would be available from the inventors; and facts related to statements about the priority dates would be available from the inventors or Securus. Subject 5 inquires into the scope of patents and applications. These are publicly available documents and their scope is evident from the documents themselves. So, all of the deposition subjects are available from sources other than Securus' attorneys. This weighs in favor of quashing these depositions.
The second consideration of the Shelton test is that the information sought is relevant and non-privileged. Shelton , 805 F.2d at 1327. The relevance of these subjects to GTL's inequitable conduct defense is clear on their face. They are directed toward determining the truth or falsity of the statements made to the PTAB and whether or not the statements were knowingly and intentionally made.
But, the privilege status of these subjects is disputed. Bragalone and Mr. Kimble assert that all of the subjects implicate either the attorney client privilege or the work product doctrine. GTL asserts that any subjects that touch on privileged material are still proper deposition topics because the crime or fraud exception to privilege applies because the alleged inequitable conduct was a fraud committed on the Patent Office.
The Court agrees with Bragalone and Mr. Kimble that all of the deposition subjects at least implicate a privilege. All of the subjects of inquiry go into facts that *639 Bragalone and Mr. Kimble would only be aware of through communications with Securus, which implicates the attorney client privilege. To the extent these subjects are intended to inquire into Bragalone's or Mr. Kimble's analysis based on these facts, this implicates attorney work product. For example, subject 5 makes inquiry into the communications, decisions, analyses, and strategies of the Securus' counsel. These are clearly directed to information that is protected by these privileges.
Regarding GTL's assertion that the crime or fraud exception allows GTL to inquire into privileged information, GTL has not met the burden required to show that this exception applies. A party seeking to overcome a privilege through the crime or fraud exception must show 1) an independent prima facia case that a crime or fraud has been committed and 2) demonstrate that the privileged information bears a relationship to the alleged crime or fraud. Ward v. Succession of Freeman , 854 F.2d 780, 790 (5th Cir. 1998). "Mere allegations of fraud are not ... sufficient to break a privilege." Id. GTL has failed to make a prima facia case of fraud.
In a patent matter, the application of the crime or fraud exception is governed by the law of the Federal Circuit, and under this law, GTL must make a showing of Walker Process fraud, otherwise known as common law fraud, in order to make a prima facia case of fraud. Unigene Labs., Inc. v. Apotex, Inc. , 655 F.3d 1352, 1358-59 (Fed. Cir. 2011). This requires GTL to show 1) a representation of material fact; 2) the falsity of that representation; 3) the intent to deceive or, at least, a state of mind so reckless as to the consequences that it is held to the equivalent of intent (scienter); 4) a justifiable reliance upon the misrepresentation by the party deceived which induces him to act thereon; and 5) injury to the party deceived as a result of his reliance on the misrepresentation. Id. Absent a showing of all of these elements, Walker Process fraud is generally not held to exist. Id. A party attempting to show a prima facie case of Walker Process fraud must show independent and clear evidence of these elements. Id.
In the current case, GTL has not shown a prima facia case with independent and clear evidence of fraud. GTL argues that it is reasonable to assume that Securus specifically intended to deceive the Patent Office as to the invention date of the dependent claims of the '357 and '260 patents because other prior art, which was referenced in the '357 and '260 patents or their parent patent, the '167 patent, should have been reviewed by Securus' counsel. It appears that GTL argues that this inferred review of the prior art would have provided the information necessary to conclude that the asserted invention date was not correct.
GTL also argues that it is reasonable to assume that Securus' counsel knew that the inventions claimed in the dependent claims of the '357 and '260 patents were made before the filing date of the '357 and '260 patents because the limitations of these dependent claims add trivial elements to the independent claims.
The Court disagrees with GTL's argument that these two inferences prove a prima facie case of fraud by independent and clear evidence. The inferences upon which GTL relies are just GTL's allegations, inferences, and interpretations as to what Securus or Securus' counsel knew about the inventions dates and their alleged intent to deceive the Patent Office. As Bragalone and Mr. Kimble point out, there are many other interpretations or inferences that could be made from this, *640 such as: since there were not any terminal disclaimers on the '357 or '260 patents, an attorney might assume that the prior art references did not disclose all of the claim elements or that the references were reviewed and it was determined that they were not material to the invention date. So, GTL's asserted reasonable inferences are not independent and clear evidence of any intent to deceive the Patent Office.
In addition, because GTL does not even attempt to show that these prior are references disclose the inventions claimed by the dependent claims of the '357 and '260 patents, GTL has failed to make a prima facie case that any representation made to the Patent Office was false. It appears that GTL's argument that a false misrepresentation was made is because Securus acknowledged that the independent claims had an earlier invention date; that the dependent claims only added "trivial" elements to these independent claims; and that the these "trivial" elements were already known in the prior art it follows that Securus misrepresented the invention dates of the dependent claims. This also does not rise to the level of clear and independent evidence needed to make a prima facie case that any representations made to the Patent Office were fraudulent. Again, they are just GTL's allegations.
So, because GTL has failed to establish a prima facie case of fraud, the crime or fraud exception does not apply to the privileged information that GTL wants to obtain from Bragalone and Mr. Kimble.
In conclusion, Securus was represented by Bragalone and Mr. Kimble in the IPRs for the patents in suit and currently represent Securus in other closely related matter; the information sought by GTL from Bragalone and Mr. Kimble is either available from some other source or it is protected by privilege; and GTL has not shown that the crime or fraud exception to privilege applies to this information. Because of this, the Court believes that the motion should be granted and the discovery should be quashed.
The Court takes notice of GTL's argument that the time of the depositions is a more appropriate time to assert a privilege and because of this the Court should allow the depositions so specific assertions of privilege to specific questions could be reviewed by the Court. The Court disagrees with GTL on this point. Considering the extent of information available from other sources in combination with the extent of information that is privileged in comparison to the intended subjects of the depositions it is highly unlikely that any information that could or should be provided to GTL is going to be relevant to the issues in this case.
For these reasons, the Court GRANTS the motion. It is ORDERED that the depositions of Bragalone and Mr. Kimble are QUASHED and that GTL shall not further serve discovery upon Bragalone or Mr. Kimble in connection with this matter without first seeking leave of Court.
SO ORDERED.